UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ISMAEL A. REYES, Plaintiff, | : | 22 Civ. 6765 (KPH) |
| - against - | : | |
| SMALL BUSINESS ADMINISTRATION, ISABEL GUZMAN, in her official capacity as Administrator of the Small Business Administration, JANET YELLEN, in her official capacity as Secretary of the Treasury, and THE UNITED STATES OF AMERICA, Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
*Attorney for Defendant*
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2785
Facsimile: (212) 637-2750
Email: joseph.pantoja@usdoj.gov

JOSEPH A. PANTOJA
Assistant United States Attorney

– Of Counsel –

## Table of Contents


Page

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND AND LEGAL FRAMEWORK..........................................................................1

ARGUMENT ..............................................................................................................................7

A. Legal Standards .....................................................................................................................7

1. Rule 12(b)(1)........................................................................................................................7

2. Rule 12(b)(6)........................................................................................................................7

3. Sovereign Immunity..............................................................................................................8

4. The Administrative Procedure Act .......................................................................................9

B. Plaintiff's Claims for Injunctive and Mandamus Relief Are Expressly Barred by the Small Business Act..........................................................................10

C. Plaintiff Fails to State Cognizable Claims Under the APA or the CARES Act ..........................................................................15

D. Plaintiff Fails to State Any Claim Against the Non-SBA Defendants..............................20

CONCLUSION..........................................................................................................................21

**Table of Authorities**

Page(s)

*Cases*:

*AARK Rest. Grp. LLC v. U.S. Small Bus. Admin.*,
No. 22-cv-01433, 2022 WL 1265531 (E.D. Pa. Apr. 28, 2022) .................. 12
*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) .................. 9
*Adeleke v. United States*,
355 F.3d 144 (2d Cir. 2004) .................. 8
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................. 7, 8, 20
*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................. 7, 8, 20
*Biden v. Texas*,
142 S.Ct. 2528 (2022) .................. 16
*Brennan v. United States*,
No. 4:20-cv-00505-KGB, 2020 WL 3980001 (E.D. Ark. July 13, 2020) .................. 9, 12, 17
*Bro. Petroleum, LLC v. United States*,
569 F. Supp. 3d 405 (E.D. La. 2021) .................. 11
*Burke v. Verizon Communications*,
No. 18 Civ. 4496 (PGG) (GWG), 2020 WL 4741043 (S.D.N.Y. Aug. 17, 2020) .................. 20
*Burrell v. U.S.*,
467 F.3d 160 (2d Cir. 2006) .................. 14
*Califano v. Sanders*,
430 U.S. 99 (1997) .................. 9
*Camelot Banquet Rooms, Inc. v. SBA*,
458 F.Supp.3d 1044 (E.D. Wis. May 1, 2020) .................. 11
*Celebration Law P.A. v. Carranza*,
No. 20-cv-00665, 2020 WL 4815821 (M.D. Fl. Aug. 19, 2020) .................. 13
*Copake Lake Dev. Corp. v. U.S. Gov't*,
490 F. Supp. 386 (E.D.N.Y. 1980) .................. 14, 16
*Davis v. Kosinsky*,
217 F. Supp. 3d 706 (S.D.N.Y. 2016) .................. 7
*Defy Ventures v. SBA.*,
469 F. Supp. 3d 459 (D. Md. 2020) .................. 11
*Denton v. Hernandez*,
504 U.S. 25 (1992) .................. 8
*Dep't of the Army v. Blue Fox*,
525 U.S. 255 (1999) .................. 8
*District Council No. 9 v. Empire State Regional Council of Carpenters*,
589 F. Supp. 2d 184 (E.D.N.Y. 2007) .................. 14
*DV Diamond Club of Flint v. SBA.*,
459 F. Supp. 3d 943 (E.D. Mich. May 11, 2020) .................. 11
*Enplanar, Inc. v. Marsh*,
11 F.3d 1284 (5th Cir. 1994) .................. 11

*FDIC v. Meyer*,
510 U.S. 471 (1994)........................................................................................................ 8
*Fountain v. Karim*,
838 F.3d 129 (2d Cir. 2016).............................................................................................. 7
*Gallop v. Cheney*,
642 F.3d 364 (2d Cir. 2011).............................................................................................. 8
*Geisler v. Small Business Administration,*
2022 WL 1002766 (W.D. Pa. Apr. 4, 2022)................................................................... 13
*Hamm v. United States*,
483 F.3d 135 (2d Cir. 2007).............................................................................................. 9
*In re Hidalgo Cty. Emergency Serv. Found.*,
962 F.3d 838 (5th Cir. 2020) ........................................................................................... 11
*J.C. Driskill, Inc. v. Abdnor,*
901 F.2d 383 (4th Cir. 1990) ........................................................................................... 11
*Keita v. U.S. Small Business Admin.*,
No. 07–CV–4958 (ENV) (LB), 2010 WL 395980 (E.D.N.Y. Feb. 3, 2010) ......................... 14, 18
*Lane v. Pena*,
518 U.S. 187 (1996)........................................................................................................ 8
*Leonard F. v. Israel Disc. Bank of N.Y.*,
199 F.3d 99 (2d Cir. 1999)................................................................................................ 8
*Lincoln v. Vigil*,
508 U.S. 182 (1993)........................................................................................................ 16
*LIT Ventures, LLC v. Carranza*,
457 F.Supp.3d 906 (D. Nev. 2020)............................................................................... 17, 18
*Norton v. S. Utah Wilderness Alliance*,
542 U.S. 55 (2004).......................................................................................................... 9
*OneSimpleLoan v. U.S. Secretary of Educ*.,
No. 06 Civ. 2979 (RMB), 2006 WL 1596768 (S.D.N.Y. June 9, 2006) ............................... 15
*Oyegbola v. U.S. Small Bus. Admin.,*
2022 WL 2786916 (D. Mass. July 15, 2022).................................................................... 12
*Palmer v. Weaver*,
512 F. Supp. 281 (E.D. Pa. 1981) ................................................................................... 11
*Pramco, LLC v. Torres*,
286 F. Supp. 2d 164 (D.P.R. 2003)................................................................................. 16
*Schilling v. Rogers*,
363 U.S. 666 (1960)........................................................................................................ 20
*Shumaker v. Guzman*,
No. 7:21-CV-00477, 2022 WL 2902843 (S.D. Tex. Apr. 4, 2020)..................................... 16, 17
*Small Bus. Admin. v. McClellan*,
364 U.S. 446, 81 S.Ct. 191, 5 L.Ed.2d 200 (1960)............................................................. 2
*Springfield Hosp., Inc. v. Guzman*,
28 F.4th 403 (2d Cir. 2022) ............................................................................................ 11
*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
752 F.3d 239 (2d Cir. 2014).............................................................................................. 7
*Thompson v. U.S. Dep't of Educ*.,
No. 20-cv-693 (AJN), 2021 WL 1199493 (S.D.N.Y. Mar. 30, 2021)..................................... 9
*Ulstein Maritime, Ltd. v. U.S.*,
833 F.2d 1052 (1st Cir. 1987)......................................................................................... 11

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
139 S. Ct. 361 (2018) ........ 15
*Weyerhaeuser*,
129 S. Ct. ........ 15, 16, 17
*Work v. United States ex rel. Rives*,
267 U.S. 175 (1925) ........ 14

*Statutes*:

5 U.S.C. § 701 ........ 9, 15
5 U.S.C. § 702 ........ 9
5 U.S.C. § 704 ........ 9
5 U.S.C. § 706 ........ 1
15 U.S.C. § 633 ........ 1, 2
15 U.S.C. §634 ........ 10, 12, 14
15 U.S.C. § 636 ........ 1, 15, 19, 20
15 U.S.C. § 9009 ........ 3, 13, 17, 18
28 U.S.C. § 1331 ........ 9
28 U.S.C. § 2201 ........ 20
Pub. L. 83-163 ........ 1
Pub. L. 116-136 § 1110 ........ 2, 13, 16, 20

*Rules:*

Fed. R. Civ. P. 12(b)(1) ........ 7
Fed. R. Civ. P. 12(b)(6) ........ 7, 8, 20
Federal Rule of Civil Procedure 56 ........ 7

*Regulations*:

13 C.F.R. § 123.5(a) ........ 20

## PRELIMINARY STATEMENT

Plaintiff Ismael A. Reyes ("Plaintiff") has filed this action seeking injunctive and declaratory relief against the United States Small Business Administration (the "SBA"); Isabella Guzman ("Guzman"), the Administrator of the SBA; Janet Yellen ("Yellen"), Secretary of the United States Department of the Treasury (the "Treasury"); and the United States of America alleging violations of the Administrative Procedure Act (the "APA"), 5 U.S.C. § 706, in connection with the SBA's denial of his application for an Economic Impact Disaster Loan ("EIDL") and other targeted SBA funds during the COVID-19 pandemic. As discussed below, the Complaint should be dismissed pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim for which relief can be granted, respectively.

## BACKGROUND AND LEGAL FRAMEWORK

Through the Small Business Act of 1953, Congress established the SBA to "aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns" in order to preserve the system of free competitive enterprise that is "essential" to the nation's economic wellbeing and security. Pub. L. 83-163, 67 Stat. 232 (1953) (codified at 15 U.S.C. § 631(a)); *see also* 15 U.S.C. § 633(a) (establishing the SBA). Section 7(b)(2) of the Small Business Act authorized the SBA to make such loans as the SBA "may determine to be necessary or appropriate to any small business concern, private nonprofit organization, or small agricultural cooperative located in an area affected by a disaster . . . if [the SBA] determines that the concern, the organization, or the cooperative has suffered *a substantial economic injury as a result of such disaster* . . . ." 15 U.S.C. 636(b)(2) (emphasis added). To effectuate these goals, Congress gave the SBA "extraordinarily broad powers," including "that of lending money to small businesses

whenever they could not get necessary loans on reasonable terms from private lenders." *Small Bus. Admin. v. McClellan*, 364 U.S. 446, 447, 81 S.Ct. 191, 5 L.Ed.2d 200 (1960). In order to ensure that the SBA could respond swiftly to economic developments, Congress placed the agency under the management of a single Administrator. 15 U.S.C. § 633(a), (b)(1). Further, Congress delegated authority to the Administrator to "make such rules and regulations as [she] deems necessary to carry out the authority vested in [her]," and "take any and all actions" that she "determines . . . are necessary or desirable in making, servicing, compromising, modifying, liquidating, or otherwise dealing with or realizing on loans made under" the Small Business Act. *Id*. § 634(b)(6), (b)(7).

During the 2020 COVID-19 pandemic, the United States made available to citizens EIDLs that the SBA manages. *See* Coronavirus Economic Stabilization ("CARES Act"), Pub. L. 116-136 § 1110, 134 Stat. 469 (Mar. 27, 2020); ECF No. 2 ("Complaint" or "Compl.") ¶ 9. Under the EIDL program, small business owners were eligible for loans of up to $2 million in working capital to pay ordinary business expenses or business debt. *Id*. In the original iteration of the CARES Act, passed on March 27, 2020, the law mandated that, with respect to an EIDL application, the SBA "(1) approve an applicant based solely on the credit score of the applicant and shall not require an applicant to submit a tax return or a tax return transcript for such approval . . . ." Pub. L. 116-136 § 1110(d)(1) (codified as 15 U.S.C. § 9009) (amended by Pub. L. No. 116-260 § 332, 134 Stat. 306 (Dec. 27, 2020)). The Consolidated Appropriations Act, approved on December 27, 2020, amended the CARES Act provisions governing the EIDL program such that the SBA may "use information from the Department of the Treasury to

confirm that— (A) an applicant is eligible to receive such a loan; or (B) the information contained in an application for such a loan is accurate." 15 U.S.C. § 9009(d)(2).[1]

According to the Complaint, Plaintiff is a resident and business owner located at 276 Eastchester Road 2nd FL, New Rochelle, NY 10801, and operated a "marketing consulting business." *Compl.* ¶ 4. Plaintiff alleges that as a result of "COVID-19 and economic downturn, Plaintiff['s] business was negatively impacted and suffered substantial economic injury." Compl. ¶ 10. On April 21, 2021, Plaintiff applied for a COVID-related EIDL. *Id*.

Plaintiff alleges that, on June 6th, 2021, Plaintiff's application for "Targeted Advance and Supplemental Targeted Advance Grants" were "'denied because business is not located in a low-income community (*see exhibit "A" pg 1*)." *Compl*. ¶ 11. This allegation appears to refer to the SBA's Targeted EIDL and Supplemental Targeted Advance programs. From information publicly available on SBA's website:

> **Targeted EIDL Advance**: The Economic Aid to Hard-Hit Small Businesses, Non-Profits, and Venues Act (Economic Aid Act) provides that businesses which received a previous Advance in an amount less than $10,000 will have first priority for the Targeted EIDL Advance, which would be the difference between the amount they received and the $10,000 maximum. Those businesses will be the first group to receive email invites to the application portal. The second priority group are businesses that applied for EIDL assistance by Dec. 27, 2020 but did not receive an Advance. Specifically, the business must be located in a low-income community as defined by section 45D(e) of the Internal Revenue Code; suffered greater than 30 percent economic loss over an 8-week period since March 2, 2020, compared to the previous year; and have 300 or fewer employees.
>
> **Supplemental Targeted Advance**: The American Rescue Plan Act allows for Supplemental Targeted Advance payments of $5,000 to the hardest hit small businesses and nonprofit organizations. Applicants that may qualify for the Supplemental Targeted Advance must meet additional eligibility criteria. Specifically, the business must be located in a low-income community as defined by section 45D(e) of the Internal Revenue Code; suffered greater than 50 percent economic loss over an 8-week period since March 2, 2020, compared to the previous year; and have 10 or fewer employees. The Supplemental Targeted Advance is in addition to the $10,000 Targeted EIDL Advance, for a total of up to $15,000.

---

[1] The Complaint makes no mention of this amendment to the CARES Act.

Available at: https://www.sba.gov/document/support-faq-regarding-targeted-eidl-advance.

Attached to the Complaint as Exhibit A is a letter dated June 6, 2021, from SBA addressed to Plaintiff at 276 Eastchester Road 2nd FL, New Rochelle, NY 10801, which provides:

> "The U.S. Small Business Administration (SBA) has reviewed the Targeted Economic Injury Advance application you submitted and unfortunately, we are unable to approve your request for the following reason(s)
>
> **Not Eligible**: The applicant business is not located in a low-income community."

*Compl.* Ex. A. Plaintiff alleges that he appealed this decision, providing a lease and utility bill to show that from February 1, 2019, to June 30, 2020, the business was in a low-income community within the meaning of SBA guidelines. Compl. ¶ 11; Ex. B. Attached to the Complaint as Exhibit B is a copy of a 2019 residential lease for 618 Wales Avenue, Bronx, NY 10455, that expired June 30, 2020, *i.e.*, ten months prior to Plaintiff's COVID EIDL application. Compl. ¶ 11 and Ex. B. That address also differs from the address provided in Plaintiff's application. Compl. Ex. A.

On June 20, 2021, Plaintiff's COVID-related EIDL application was "denied due to Non Eligible Business Activity business." Compl. ¶ 12. Attached to the Complaint as Exhibit C is a letter dated June 20, 2021, from SBA to Plaintiff, which provides:

> ". . . we are unable to offer you a Economic Injury Disaster Loan (EIDL) for the reason(s) described below.
>
> **Business activity is not eligible. EIDL assistance is available only to a small business engaged in an eligible business activity. Business activity means the nature of the business conducted by the applicant**.
>
> The information you submitted with your application does not meet SBA regulations for an eligible business activity."

*Id.* ¶ 12 and Ex. C (emphasis in original). Plaintiff alleges that he appealed this denial on June 23, 2021, by providing documentation of "an eligible business activity (*see* exhibit 'D' pg 2)." Compl. ¶ 12.

According to the Complaint, in August 2021, "during the reconsideration process, it was established that Plaintiff filed an amended return." Compl. 13. "Plaintiff informed the SBA that his original 2019 Tax Returns only included his wife's wages and due to the death of his bookkeeper, they filed prematurely without his business income included," *id*. ¶ 13, that "Plaintiff amended the return to include the business income, however due to the IRS backlog, the Amendment was never processed," and that Plaintiff learned of this delay "after Plaintiff signed form 4506-T requesting its transcripts on September 15th, 2021." *Id*. Also in August 2021, Plaintiff allegedly sent various financial statements to SBA "to show Plaintiff business was in operation prior to the disaster." *Id*. ¶ 14. Thereafter, in response to SBA's requests, Plaintiff provided the SBA with additional documents, including, on December 1, 2021, copies of its amended tax returns for 2019 and 2020, which were stamped to indicate receipt by the IRS. *Id*. ¶¶15-19 and Exs. G and H, respectively. On December 28, 2021, the SBA allegedly informed Plaintiff "that due to a change on [SBA's] policies they were no longer accepting stamped returns anymore and that Plaintiff need to wait until the IRS processed its amended returns," and that SBA's reconsideration of the denial of Plaintiff's applications "will be open for up to 6 months." *Id*. ¶ 20.

Plaintiff alleges that on "May 5th, the SBA announce[d] that the [COVID] EIDL program is ending, and all portals will go down on May 16, 2022." Compl. ¶ 21. Plaintiff alleges that "[s]hortly after the SBA announced that all funds are out and that only applicants who are obligated will be funded," he called SBA customer service, which "confirm[ed] his file is still

processing waiting for the IRS transcripts." *Id*. ¶ 22. Plaintiff alleges that "[a]fter several months dealing with the IRS, finally on May 13th, 2021[2] [federal tax] returns were processed. Plaintiff immediately submitted form 4506-T in order the SBA could have access to its transcripts." *Compl.* ¶ 23. Also in May 2022, Plaintiff asked his congressman to follow up with SBA on his behalf. *Id*. ¶¶ 25-27.

On June 7, 2022, SBA customer service allegedly advised Plaintiff that the reconsideration of the denial of his EIDL applications concluded when SBA ended the EIDL program. *Id*. ¶ 27. That same day, Plaintiff claims that a "Congressional office" contacted Plaintiff via email and forwarded updates from SBA, which purportedly explained, *inter alia*, that Plaintiff's original 2019 federal tax return originally included only his wife's wages and reported no business income, that "the amendment for 2019 was not accepted by the SBA for neither the EIDL loan program or the Targeted Advance due to the IRS discrepancies," and that the denial of his applications would not be reconsidered as SBA was no longer reviewing previously declined applications. *Id*. ¶ 28.

Plaintiff alleges that the SBA's reconsideration of the denial of his applications should have remained active until May 16, 2022. *Id*. Plaintiff further alleges that the SBA denied his application for EIDL funds "based upon a finding and conclusion the SBA had no authority to find or conclude." Compl. (introductory paragraph).

---

[2] The reference to "2021" appears to be a typographical error that should read "2022." The Complaint's paragraphs are arranged chronologically, and, in any event, the events described in paragraph 23 necessarily follow the events described in paragraphs 20-22, which occurred in late 2021 and Spring 2022. Likewise, the references to "2021" in paragraphs 24, 26, and 27 apparently should also be to "2022."

## ARGUMENT

### A. Legal Standards

#### 1. Rule 12(b)(1)

Under Rule 12(b)(1), a defendant may move to dismiss a complaint for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). When faced with a motion to dismiss for lack of subject-matter jurisdiction, a plaintiff must establish the court's jurisdiction by a preponderance of the evidence. *See Davis v. Kosinsky*, 217 F. Supp. 3d 706, 707 (S.D.N.Y. 2016). In reviewing a Rule 12(b)(1) motion, a district court "must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)). However, where there is a factual dispute, the court may look to evidence outside the complaint to resolve any disputed issues of jurisdictional facts. *See id*. In reviewing information outside the pleadings, courts may not consider conclusory statements or hearsay, and the body of law applicable to Federal Rule of Civil Procedure 56 applies. *See Davis*, 217 F. Supp. 3d at 708.

#### 2. Rule 12(b)(6)

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A complaint should be dismissed if the plaintiff has not offered factual

allegations sufficient to render the claims facially plausible. *See id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). A court may dismiss a complaint, even a "sufficiently well-pleaded" one, if it contains "fanciful, fantastic, or delusional" facts. *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)) (internal quotation marks omitted). However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

The requirement that a court accept the factual allegations in the complaint as true does not extend to legal conclusions. *See Iqbal*, 556 U.S. at 678. In adjudicating a Rule 12(b)(6) motion, a court "must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

**3. Sovereign Immunity**

"[U]nder the principle of sovereign immunity [] the United States may not be sued without its consent and [] the existence of consent is a prerequisite for jurisdiction." *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004). Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.'" *Dep't of the Army v. Blue Fox*, 525 U.S. 255, 260 (1999) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). "[A] waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign." *Id.* at 261 (citing *Lane v. Pena*, 518 U.S. 187, 192 (1996)). Where, as here, "the suit is brought against the

federal government, the Plaintiff bear[s] the burden to show Congress waived sovereign immunity with respect to their claims.'" *Thompson v. U.S. Dep't of Educ.*, No. 20-cv-693 (AJN), 2021 WL 1199493, at *2 (S.D.N.Y. Mar. 30, 2021). "[W]here a waiver of sovereign immunity does not apply, a suit should be dismissed under [Rule 12(b)(1).]" *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007).

### 4. The Administrative Procedure Act

"It is well-established that the APA itself does not provide subject matter jurisdiction; rather, it provides a cause of action for a plaintiff who has properly asserted a federal question under 28 U.S.C. § 1331." *Brennan v. United States*, No. 4:20-cv-00505-KGB, 2020 WL 3980001 at *3 (E.D. Ark. July 13, 2020) (citing *Califano v. Sanders*, 430 U.S. 99, 107 (1997)). The APA limits judicial review to "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. APA review is also limited to persons "suffering legal wrong because of agency action" and authorizes the Court to "compel agency action unlawfully withheld or unreasonably delayed," or "hold unlawful and set aside" agency actions that are unlawful. 5 U.S.C. §§ 702, 706. The "basic presumption of judicial review," *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967), established under the APA may be rebutted where "statutes preclude judicial review" or "agency action is committed to agency discretion by law," 5 U.S.C. § 701(a); *see also Brennan*, 2020 WL 3980001, at *4. Under the APA, the Court may only compel an agency to take an action that is "legally required." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004). In that situation, the Court may only compel an agency "to take action upon a matter, without directing how it shall act." *Id*.

### B. Plaintiff's Claims for Injunctive and Mandamus Relief Are Expressly Barred by the Small Business Act

Plaintiff's requests for injunctive relief against the SBA should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure because they are expressly barred by statute. Plaintiff seeks an order compelling "Defendants to fulfill their duties to administer EIDL Loans to Plaintiff that are eligible under the criteria set out in the CARES Act"; "save the Plaintiff['s] place in line for the first-come, first-served funds that Congress allotted for EIDL loans by enjoining the Defendants from dispensing $320,000 of the funds" for which Plaintiff alleges eligibility, plus "$15,000 regarding the EIDL targeted and EIDL Targeted advance grants for businesses located in low income area"; and "restore Plaintiff to [his] place in queue as of the time Plaintiff['s] application [was] denied for the EIDL Loan." Compl. (Prayer for Relief). Read broadly, the Complaint also takes issue with the SBA relying on the IRS for Plaintiff's federal tax-related information or using that information—including the fact that Plaintiff, whose 2019 federal tax return originally reported no business income, did not file an amended 2019 tax return including business income until 2021—to support a denial of his EIDL applications. *C*ompl. (introductory paragraph).[3] Yet Section 634(b)(1) of the Small Business Act expressly bars Plaintiff's claims for injunctive relief.

Section 634(b)(1) provides that "no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property." 15 U.S.C. § 634(b) (1). By its terms, section 634(b)(1) is a blanket exception that prohibits the issuance of

---

[3] According to Plaintiff, SBA did not accept Plaintiff's amended 2019 federal tax return "for neither the EIDL loan program or the Targeted Advance due to the IRS discrepancies" Compl. ¶ 28 (also referring to IRS backlog); *id*. ¶ 30 ("Congress did not give the SBA authority to make such a conclusion or finding, 'if a business was or [was] not an active revenue reporting entity prior to the disaster.").

any injunction against the SBA. *In re Hidalgo Cty. Emergency Serv. Found*., 962 F.3d 838, 840-41 (5th Cir. 2020) (634(b)(1) (holding Section 634(b)(1) bars all injunctive relief against SBA and declining to carve out an exception); *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1290 n.6 (5th Cir. 1994) (same); *J.C. Driskill, Inc. v. Abdnor,* 901 F.2d 383, 386 (4th Cir. 1990) ("[C]ourts have no jurisdiction to award injunctive relief against the SBA."); *see also Palmer v. Weaver*, 512 F. Supp. 281, 285 (E.D. Pa. 1981) ("Federal courts have consistently held that this provision [Section 634(b)(1)] precludes the issuance of an injunction against the Administrator because the court has no subject matter jurisdiction and therefore no power to order such relief."). Plaintiff's claims for injunctive relief related to his EIDL application and related advances are thus expressly precluded by statute, and should be dismissed. *See, e.g.*, *Bro. Petroleum, LLC v. United States*, 569 F. Supp. 3d 405, 408 (E.D. La. 2021) (denied plaintiffs' request for preliminary injunction regarding the SBA's consideration of criminal history when evaluating COVID-19 relief applications "based upon strong Fifth Circuit precedent that district courts lack subject matter jurisdiction to grant such relief against the SBA").

Although a minority of courts have held that section 634(b)(1) does not pose a complete bar to injunctive relief, even those cases are in accord that section 634(b)(1) prohibits the issuance of injunctive relief that would "interfere with internal agency operations," including by attaching agency funds. *Ulstein Maritime, Ltd. v. U.S.*, 833 F.2d 1052, 1057 (1st Cir. 1987).[4] *See, e.g., Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 415 n.16 (2d Cir. 2022) (noting "our

[4] In his pre-motion letter, ECF No. 16 at 1, Plaintiff relied on such cases. *See DV Diamond Club of Flint v. SBA*., 459 F. Supp. 3d 943, 954 (E.D. Mich. May 11, 2020) (injunctive relief available to set aside unlawful agency action so long as plaintiff does not seek to attach SBA assets or otherwise interfere with its internal operations); *Defy Ventures v. SBA*., 469 F. Supp. 3d 459, 471 (D. Md. 2020) (same); *Camelot Banquet Rooms, Inc. v. SBA*, 458 F.Supp.3d 1044, 1052 (E.D. Wis. May 1, 2020) (same).

sister circuits are split on Section 634(b)(1)'s reach" but declining to reach issue). *Ulstein* is clearly an outlier. *Brennan v. United States*, No. 4:20-cv-00505-KGB, 2020 WL 3980001 at *3 (E.D. Ark. July 13, 2020) ("*Ulstein Maritime*, to the extent it purports to authorize federal district courts to award injunctive relief against the SBA, is against the clear weight of authority.") (collecting cases).

In *Oyegbola v. U.S. Small Bus. Admin.*, for example, plaintiff claimed that basing EIDL applicants' ineligibility on whether they filed 2019 tax returns in 2021 violated the CARES Act. No. 22-cv-10698-AK, 2022 WL 2786916, at *1 (D. Mass. July 15, 2022). Oyegbola requested the Court enjoin the defendants from relying on when tax returns were filed and "order the defendants not to 'authorize, guaranty, or disburse funds appropriated for loans' under the COVID-19 federal relief programs 'without reserving sufficient funds to cover' Oyegbola's applications and to extend the review of his application by ten days." *Id*. The Court there found that "[s]uch an injunction would attach SBA funds in direct contravention of 15 U.S.C. §634(b)(1)" and "would also require the SBA to change the way it evaluates all EIDL applications, which clearly interferes with internal agency operations." *Id*. at *3. *See also AARK Rest. Grp. LLC v. U.S. Small Bus. Admin.*, No. 22-cv-01433, 2022 WL 1265531, at *4 (E.D. Pa. Apr. 28, 2022) ("The injunctive relief Plaintiffs seek would certainly interfere with the SBA's internal workings, requiring me to: (1) direct the Agency to 'expeditiously process' Plaintiffs' EIDL loan increase applications; (2) prohibit the Agency from considering specific evidence and circumstances; and (3) direct the Agency to set aside $6,036,600. Injunctive relief is thus barred under even *Ulstein*'s narrow waiver exception.").[5]

[5] Plaintiff acknowledges that he did not amend his 2019 income tax return to report business income until 2021; that he did not provide SBA with copies of his 2019 and 2020 tax returns

Likewise, in *Geisler v. Small Business Administration*, the Court observed that the injunctive relief sought by Geisler "would clearly require the Court to issue an order interfering with the internal workings of the SBA—by, for example, requiring the SBA to establish a 'dedicated loan officer with a contact number who can answer all inquiries including who has the power to approve or deny the loan increase' and 'directing that the SBA immediately review and reconsider the Plaintiff's EIDL increase application within three (3) days, reviewable by this Court'—and attach agency funds." No. 21-cv-01692, 2022 WL 1002766, at *3 (W.D. Pa. Apr. 4, 2022).[6] Accordingly, in concluding that it lacked subject matter jurisdiction, the *Geisler* court found that it need "not decide the precise contours of Section 634(b) (1) here because the relief Mr. Geisler seeks runs afoul of even the narrowest construction of the statute." *Id*. at *4.

As in *Oyegbola*, *Geisler*, and *AARK*, requiring the SBA to revisit the denial of Plaintiff's applications, refrain from dispensing $320,000 in loans and/or $15,000 in advances, "restore Plaintiff to [his] place in queue as of the time Plaintiff['s] application [was] denied," and refrain from consideration of certain information would clearly interfere with the SBA's internal operations, particularly because the COVID EIDL program was discontinued and Plaintiff seeks to attach agency funds. *See also, e.g., Celebration Law P.A. v. Carranza*, No. 20-cv-00665, 2020

until December 2021; and that the returns were still being processed and otherwise considered by the IRS as of May 2022 and that the SBA was waiting for the IRS to forward Plaintiff's tax transcripts. Compl. ¶¶ 13, 16, 18, 20, 22-24, 28. Although the CARES Act, as originally enacted, required the SBA to "(1) approve an [EIDL] applicant based solely on the credit score of the applicant and shall not require an applicant to submit a tax return or a tax return transcript for such approval," Pub. L. 116-136 § 1110(d)(1) (March 27, 2020), the December 27, 2020, amendments to the CARES Act permitted the SBA to "use information from the Department of the Treasury to confirm that . . . (A) an applicant is eligible to receive such a loan; or (B) the information contained in an application for such a loan is accurate" before granting EIDL applications. 15 U.S.C. § 9009(d)(2).

[6] As in *Oyegbola* and here, Geisler did not provide the IRS with the necessary 2019 tax year information until 2021. *Geisler*, 2022 WL 1002766, at *1.

WL 4815821, at *3 (M.D. Fl. Aug. 19, 2020) ("Given the SBA's use of the Per Employee Rule in awarding and obligating all EIDL grants to date and the near-depletion of the EIDL grant appropriation, requiring Respondent to stop using the Per Employee Rule and instead award each Petitioner $10,000 would likely interfere with the SBA's internal operations."). For the foregoing reasons, this Court should dismiss Plaintiff's requests for injunctive relief against the SBA in their entirety for lack of jurisdiction. *See* Compl. ¶ 40 (Count II); *id*. ¶ 52 (Count III); *id*. ¶ 63 (Count IV); *id.* (Prayer for Relief). *See Keita v. U.S. Small Business Admin.*, No. 07–CV–4958 (ENV) (LB), 2010 WL 395980, at *4 (E.D.N.Y. Feb. 3, 2010) ("Since Keita seeks only injunctive relief, the Small Business Act expressly denies the Court subject matter jurisdiction to review the SBA loan denial decisions.").

Plaintiff's request for mandamus relief should also be dismissed for lack of jurisdiction and failure to state a claim. Compl. ¶¶ 64-69 (Count V). It falls within the injunction bar of Section 634(b)(1), which bars "attachment, injunction, garnishment, *or other similar process*, mesne or final . . . . against the Administrator or h[er] property." 15 U.S.C. § 634(b)(1) (emphasis added). It also fails because the SBA's decision concerning the granting of a loan is one committed to agency discretion by law. *See, e.g., Copake Lake Dev. Corp. v. U.S. Gov't*, 490 F. Supp. 386, 389 (E.D.N.Y. 1980) ("[T]he decision concerning the granting of a loan by the SBA is one firmly committed to agency discretion, and other courts that have considered the question are uniformly in agreement on this point."); *see also*, *e.g.*, *Burrell v. U.S.*, 467 F.3d 160, 164 (2d Cir. 2006) (citing *Work v. United States ex rel. Rives*, 267 U.S. 175, 177 (1925) ("Mandamus issues to compel an officer to perform a purely ministerial duty. It cannot be used to compel or control a duty in the discharge of which by law he is given discretion.")); *District Council No. 9 v. Empire State Regional Council of Carpenters*, 589 F. Supp. 2d 184, 192-93

(E.D.N.Y. 2007) ("Of course, it is an equally venerable principle that mandamus will only lie to require performance of a purely ministerial act; when the statutory or corporate provision sought to be enforced is discretionary, mandamus is not available."); *OneSimpleLoan v. U.S. Secretary of Educ*., No. 06 Civ. 2979 (RMB), 2006 WL 1596768, at *6 (S.D.N.Y. June 9, 2006) ("Plaintiffs' requested relief 'in the nature of a mandamus' appears to the Court to fall squarely within the meaning of the phrase 'other similar process' in [20 U.S.C.] § 1082(a)(2)," the anti-injunction provision of the Federal Family Education Loan).

### C. Plaintiff Fails to State Cognizable Claims Under the APA or the CARES Act

Plaintiff's claim for declaratory relief should likewise be dismissed pursuant to Rule 12(b)(6). Specifically, he seeks to have "SBA actions"—including its consideration of tax information received directly from the IRS—declared "contrary to the CARES Act," and "SBA's actions, conclusions, and decisions" in denying his applications and appeals declared "arbitrary and capricious." Compl. (Prayer for Relief at ¶¶ A, B; *see id*. ¶¶ 53-63 (alleging that the SBA's actions were arbitrary and capricious under 5 U.S.C. § 706(2)(A)). Yet Plaintiff's claims are deficient in a number of key respects.

First, the APA does not permit review of agency actions which are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018). This exception applies "where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Weyerhaeuser*, 129 S. Ct. at 370 (citation omitted). Such is the case here. Under the Small Business Act, the SBA makes loans as it "*may* determine to be necessary or appropriate." 15 U.S.C. § 636(b)(2) (emphasis added). Similarly, § 1110(e) provides that an eligible entity "that applies for a loan under [15 U.S.C. § 636(b)(2)] in response to COVID-19 *may* request that

the Administrator provide an advance that is, subject to paragraph (3), in the amount requested by such applicant to such applicant within 3 days after the Administrator receives an application from such applicant." Pub. L. No. 116-136, § 1110 134 Stat. 281, 307 (2020) (emphasis added).

The "word 'may' clearly connotes discretion," *Biden v. Texas*, 142 S.Ct. 2528, 2541 (2022), and the allocation of lump-sum appropriations is typically considered a discretionary act, *see Lincoln v. Vigil*, 508 U.S. 182, 192 (1993) ("The allocation of funds from a lump-sum appropriation is another administrative decision traditionally regarded as committed to agency discretion. After all, the very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way."); *see also Weyerhaeuser*, 129 S. Ct. at 370 (explaining that the "few cases in which we have applied the § 701(a)(2) exception involved agency decisions that courts have traditionally regarded as unreviewable, such as the allocation of funds from a lump-sum appropriation");[7] *Shumaker v. Guzman*, No. 7:21-CV-00477, 2022 WL 2902843, at *7 (S.D. Tex. Apr. 4, 2020) ("With respect to funding requested EIDL Advances, the Court agrees that § 1110(e) of the CARES Act does not require the SBA to provide an EIDL Advance. Instead, § 1110(e) allows an individual to request an EIDL Advance from the SBA. While § 5002(b)(2)(B) of the American Rescue Plan Act of 2021 includes the word 'shall,' the word is used to state how the SBA Administrator is to use appropriated funds; 'shall' is not used to require the SBA Administrator to fund all requested EIDL Advances. Thus, the decision to fund a requested EIDL Advance is also committed to agency discretion by law. Since Plaintiff's breach of contract claim is based on at least one of the decisions described above, Plaintiff's breach of contract claim must

[7] *Copake Lake Dev. Corp.*, 490 F. Supp. at 389 (the SBA's decision to grant loan "firmly committed to agency discretion"); *Pramco, LLC v. Torres*, 286 F. Supp. 2d 164,169 (D.P.R. 2003) (same).

be dismissed for lack of jurisdiction."); *LIT Ventures, LLC v. Carranza*, 457 F.Supp.3d 906, 911 (D. Nev. 2020) (denying injunctive and mandamus relief "[b]ecause the CARES Act does not create a mandatory, ministerial duty" to grant advances under § 1110(e)).

The CARES Act as amended does not alter the discretion afforded to the Administrator. While the CARES Act briefly did contain a limit on the SBA's discretionary decisionmaking, by not permitting the SBA to rely on tax return information to determine eligibility for EIDL funding, Congress amended the CARES Act on December 27, 2020, to provide that the SBA "*may* use information from the Department of the Treasury to confirm that (A) an applicant is eligible to receive such a loan; or (B) the information contained in an application for such a loan is accurate." 15 U.S.C. § 9009(d)(2) (emphasis added). This amendment allowing consideration of information from the IRS took place before Plaintiff applied for an EIDL on April 21, 2021. *See* Compl. ¶ 10.[8] Here, too, the language is discretionary. In providing simply that the SBA may consider tax information to confirm applicant eligibility and the accuracy of information in a loan application, 15 U.S.C. § 9009(d)(2), the CARES Act provides no discernable standard regarding the SBA's review of Treasury information, including tax returns or transcripts, that allows for any meaningful judicial review. *See Weyerhaeuser*, 129 S. Ct. at 370. Accordingly, the SBA's actions here were committed to agency discretion by law and are therefore unreviewable. *See, e.g., Shumaker v. Guzman*, No. 21-CV-00477, 2022 WL 2902843, at *7 (S.D. Tex. Apr. 4, 2022) (decision to increase or advance EIDL loan is "committed to agency discretion by law"); *Brennan v. United States*, No. 20-CV-00505, 2020 WL 3980001, at *9 (E.D.

[8] In June 2021, *i.e.*, before Plaintiff's 2019 and 2020 tax information were available to the SBA via the IRS, his EIDL advance application was denied on the ground that Plaintiff's business was not located in a low-income community, *id*. ¶11 and Ex. A at 1, and Plaintiff's EIDL application was initially denied on the ground that his business activity was not eligible. Compl. ¶ 12 and Ex. C at 1.

Ark. July 14, 2020) ("[T]he CARES Act vests the Administrator with discretion."); *LIT Ventures, LLC v. Carranza*, 457 F. Supp. 3d 906, 910 (D. Nev. 2020) ("Congress therefore granted the SBA discretion to determine what EIDLs were 'necessary and appropriate.'"); *Keita,* 2010 WL 395980, at *3 ("Here, the Court lacks guidance to adjudge the SBA's exercise of its discretion because Keita seeks review of the individual economic judgments that comprised the SBA's decision that his loans were not "necessary or appropriate."").

While the CARES Act waived certain eligibility requirements for COVID EIDLs, nothing in the CARES Act limited the SBA's discretionary decision-making authority under Section 7(b)(2) of the Small Business Act. Nor does anything in the CARES Act or Section 7(b)(2) provide applicants a *de facto* entitlement to loan approval merely by submitting required or requested documentation. Thus, even if the SBA had denied Plaintiff's request for an advance or an EIDL, because of issues with his tax returns or otherwise, the Complaint includes no plausible factual basis for finding that the SBA's decision exceeded its authority under the CARES Act. The CARES Act having expressly authorized the SBA to consider information received directly from the IRS in determining EIDL eligibility, Plaintiff's suggestion that the SBA somehow acted inconsistently or improperly in seeking such information—instead of relying on the copies of the 2019 and 2020 returns that Plaintiff provided to SBA, whether "stamped" by the IRS or not—is frivolous and otherwise fails to state a claim. *See* Compl. ¶ 15-16, 18, 20; *see also* Plaintiff's pre-motion letter, ECF No. 16, at 3-4 ("The Defendants have implemented a regulation, creating additional eligibility criteria *sub silentio* while adjudicating individual C[OVID] EIDL loans. . . . The plain reading of 15 USC §9009(d)(2)(A) or (B) does not support the interpretation that a 2019 and 2020 amended tax returns stamped and received by the IRS in 2021 renders the applicant ineligible to participate in the EIDL program.").

Second, Plaintiff failed to adequately plead facts sufficient to show that he was eligible to receive an EIDL. The statutory language provides that the SBA may decide to grant such loans "if [the SBA] determines that the concern, the organization, or the cooperative has suffered *a substantial economic injury as a result of such disaster* . . . ." 15 U.S.C. § 636(b)(2) (emphasis added). Aside from the conclusory allegation that his business "was negatively impacted and suffered substantial economic injury" due to the "COVID-19 [pandemic] and economic downturn," Compl. ¶ 10, Plaintiff has not alleged facts sufficient to show the nature or degree of any economic injury he suffered for purposes of determining his eligibility for EIDL under the Small Business Act and/or the CARES Act.

Third, Plaintiff fails to plausibly allege that officials of the SBA acted in disregard of any right or in violation of any duty imposed on them by the Small Business Act or the CARES Act. Plaintiff's allegation that "Congress did not give the SBA authority" to determine whether a business "was or [was] not an active revenue reporting entity prior to the disaster," *Compl.* ¶ 30, is meritless, as EIDLs and related advances were intended to help small businesses overcome a temporary loss of revenue resulting from the pandemic. Plaintiff concedes that the SBA timely reviewed his applications, at least initially. *Id.* ¶ 10 (applied for EIDL on April 21, 2021); *id.* ¶¶ 11-12 (SBA denied his EIDL advance and loan applications on June 6 and 20, 2021, respectively). Plaintiff's grievance lies not in the time SBA took in making a decision; rather, Plaintiff vaguely alleges that "SBA[] showed inconsistency with its procedures each step of the process." *id.* ¶ 29. Specifically, Plaintiff takes issue with the SBA's alleged "change on their policies [whereby] they were not accepting stamped returns anymore," instead opting to receive tax-related information directly from the IRS, which was experiencing a backlog. *Id*. ¶ 20; *see also id*. ¶ 13. But the CARES Act expressly permitted the SBA to seek information directly from

the IRS prior to making loan decisions. Consequently, Plaintiff's conclusory allegations that the SBA's actions in denying his applications violated the CARES Act; were arbitrary, capricious, or an abuse of discretion; or were otherwise not in accordance with law, fails to state a claim.

For those reasons, Plaintiff's request for declaratory relief against the SBA also fails. "[T]he Declaratory Judgments Act is not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (internal citation omitted); 28 U.S.C. § 2201(a). Plaintiff does not assert a judicially remediable right against the SBA. Plaintiff's claims for declaratory relief and Counts I through IV of the Complaint as against all defendants should be dismissed for failure to state cognizable claims under the CARES Act and the APA. Fed. R. Civ. P. 12(b)(6).

**D. Plaintiff Fails to State Any Claim Against the Non-SBA Defendants**

Finally, the Court should dismiss the Complaint in its entirety as to the non-SBA defendants pursuant to Rule 12(b)(6). The SBA—not the Treasury—is the agency with authority to distribute EIDL funds. *See* 15 U.S.C. § 636(b)(1)(A) (providing that the SBA is "empowered to the extent and in such amounts as provided in advance in appropriation Acts" to "make such loans" as the SBA "may determine to be necessary or appropriate to any small business concern . . . in an area affected by a disaster"); CARES Act, Pub. L. 116-136, § 1110, 134 Stat. 281 (Mar. 27, 2020) (tasking the SBA with administering the EIDL funds and the Paycheck Protection Program); 13 C.F.R. § 123.5(a) (explaining that the "SBA offers four kinds of disaster loans"). Aside from a vague reference to a "backlog" at the IRS, *see* Compl. ¶¶ 13, 28, the Complaint alleges no specific or non-conclusory facts demonstrating any wrongdoing by the non-SBA defendants whatsoever. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570; *see, e.g.*, *Burke v. Verizon Communications*, No. 18 Civ. 4496 (PGG) (GWG), 2020 WL 4741043, at *4 (S.D.N.Y.

Aug. 17, 2020) ("Not only is the NY AG not a necessary party to this action, the [complaint] is devoid of any factual allegations against the NY AG whatsoever, and thus fails to state a claim pursuant to [Rule] 12(b)(6). Even giving Burke the 'special solicitude' owed to pro se plaintiffs and 'interpreting the complaint to raise the strongest claims that it suggests,' the [complaint] simply does not 'contain factual allegations sufficient to raise a right to relief above the speculative level.'" (internal citations omitted)).

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: New York, New York
May 4, 2023

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
*Attorney for Defendants*

By: *__/s/ Joseph A. Pantoja____*
JOSEPH A. PANTOJA
Assistant United States Attorney
86 Chambers Street, 3rd fl.
New York, New York 10007
Tel: (212) 637-2785
Email: joseph.pantoja@usdoj.gov